**GOLDEN TRIANGLE NEWS, INC., a Delaware corporation; t/d/b/a both Golden Triangle News and Mello News; Monroeville News, Inc.; Fairview Books, Inc. t/d/b/a Good n Plenty; B.L.V.D., Inc. t/d/b/a B.L.V.D. News; and North Hills News, Inc., on behalf of themselves and all others similarly situated, Petitioners,**

**v.**

**Hon. Thomas CORBETT, in his official capacity as Attorney General for the Commonwealth of Pennsylvania; Robert Colville, in his official capacity as District Attorney of Allegheny County; City of Pittsburgh, a municipal Corporation; Jacqueline R. Morrow, in her official capacity as Solicitor for the City of Pittsburgh; Municipality of Monroeville; John F. Cambest, in his official capacity as Solicitor for the Municipality of Monroeville; Township of Ross; C. Donald Gates, in his official capacity as**

Solicitor of Ross Township; and Col. Paul Evanko in his official capacity as Commissioner, Pennsylvania State Police, on behalf of themselves and on behalf of all others similarly situated, Respondents.

Commonwealth Court of Pennsylvania.

Argued March 11, 1997.

Decided Sept. 12, 1997.

Carl Max Janavitz, Pittsburgh, for petitioner, North Hill News, Inc.

Paul J. Cambria, Jr., Buffalo, NY, for petitioners, Fairview Books and B.L.V.D., Inc.

Kemal A. Mericli, Pittsburgh, for respondents, Hon. Thomas Corbett and Col. Paul Evanko.

George M. Janocsko, Pittsburgh, for respondent, Robert Colville.

C. Donald Gates, Jr., Pittsburgh, for respondents, Township of Ross and himself.

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

LEADBETTER, Judge.

Before this court for resolution are: (1) respondents' preliminary objections in the nature of a demurrer to petitioners'[1] amend-

---

1. Petitioners include Golden Triangle, Inc., Golden Triangle News, Inc., Monroeville News, Inc., Fairview Books, Inc., B.L.V.D. News, Inc. and North Hills News, Inc. (petitioners). According to their complaint, petitioners are various adult-oriented establishments which engage in the retail sale of non-obscene, sexually-oriented maga-

zines and videotapes. In addition, sexually explicit videotapes can be rented or viewed on petitioners' premises in enclosed booths, cubicles or stalls.

Respondents are the Honorable Thomas Corbett, Robert Colville, City of Pittsburgh, Jacqueline Morrow, Municipality of Monroeville, John

ed petition for review in the nature of a complaint in equity; (2) respondents' applications for summary relief; and (3) petitioners' motion for summary judgment. For the reasons set forth below, we sustain the respondents' preliminary objections, dismiss the petitioners' amended petition for review and deny petitioners' motion for summary judgment.

On December 16, 1996, petitioners filed a petition for review in this court's original jurisdiction on behalf of themselves and other similar adult-oriented establishments. The original petition for review named only the Commonwealth parties as respondents. Thereafter, an amended petition for review was filed which included the respondents named herein.[2] In Count I of their amended petition, petitioners seek a declaration that Act 120 of 1996 (the Act)[3] is unconstitutional on the basis that it, *inter alia:* (1) imposes a prior restraint on petitioners' right to engage in the dissemination of constitutionally protected expression; (2) chills the exercise of constitutional rights; (3) constitutes an impermissible content-based restriction on protected expression; (4) fails to employ the least restrictive means to further any legitimate governmental interest; (5) is unconstitutionally vague; (6) was enacted without adequate empirical studies, evidence or information to support the imposition of its restrictions; and (7) authorizes random, warrantless searches without the existence of probable cause.[4] In Count II of their petition, petitioners seek injunctive relief on the basis that enforcement of the Act will cause irreparable harm.

In conjunction with their petition, petitioners filed a motion for preliminary injunction, which this court denied on December 20, 1996. *In a lengthy opinion in support of the denial of preliminary injunctive relief, this court addressed the merits of most of the constitutional issues raised herein.* See *Golden Triangle News, Inc. v. Corbett (Golden Triangle I),* 689 A.2d 974 (Pa.Cmwlth. 1997) (single judge opinion by Leadbetter, J.).

Although we will not repeat verbatim the court's resolution of petitioners' constitutional claims, we summarily note that the court determined that the Act does not constitute a prior restraint on petitioners' freedom of speech or expression; rather, the Act is a constitutional, content-neutral, time, place and manner regulation designed to curb the adverse secondary effects of adult entertainment. 689 A.2d at 982–83.

In addition, the court held that the Act's penalty provisions, which authorize the closure of an adult-oriented establishment for a period of up to one year, do not constitute a prior restraint because (1) any closure pursuant to the Act is not the result of an advance determination that the distribution of certain materials is objectionable and (2) a closure pursuant to the Act would not preclude the dissemination of petitioners' materials at other locations. *Id.* at 984. The court also

Cambest, Township of Ross, C. Donald Gates and Colonel Paul Evanko (respondents). Mr. Corbett was the Attorney General for the Commonwealth of Pennsylvania; Mr. Colville is the district attorney for Allegheny County; Ms. Morrow is the solicitor for the City of Pittsburgh; Mr. Cambest is the solicitor for the Municipality of Monroeville; Mr. Gates is the solicitor for Ross Township; and Col. Evanko is the Commissioner of the Pennsylvania State Police.

2. Petitioners originally commenced their action in the Court of Common Pleas of Allegheny County. The defendants in that action were the respondents named in the instant suit. However, due to the fact that the court of common pleas lacked jurisdiction over the Commonwealth parties, the action against the Attorney General and the Commissioner of the State Police was transferred to this court. Thereafter, the instant amended petition for review was filed.

3. 68 Pa.C.S. §§ 5501–5509. The Act took effect on December 16, 1996. In general, the Act imposes various restrictions on adult-oriented establishments in order to discourage the use of such places for the commission of sexual acts and prostitution which promote the spread of communicable diseases. 68 Pa.C.S. § 5501(a). For instance, the Act requires that the interior of an adult-oriented establishment be well lighted at all times and that the interior portion of any booths or cubicles where adult entertainment is viewed be visible from a common area of the premises. Section 5503(b).

4. Specifically, petitioners aver that the Act violates Article I, §§ 1, 7 and 8 of the Pennsylvania Constitution.

rejected petitioners' contention that sections of the Act were unconstitutionally vague since a reasonable person, using common sense, is not required to guess in order to understand the meaning of the statute's provisions. *Id.*

Finally, the court rejected the claim that § 5505 of the Act, which provides that adult-oriented establishments "shall be open to inspection at all reasonable times," authorizes an unconstitutional warrantless search. Specifically, the court concluded that the inspection provision could be construed in a constitutional manner and, therefore, should not be held to be unconstitutional. *Id.* at 985.

Now before the court are respondents' preliminary objections in the nature of a demurrer and both sides' motions for summary relief.[5] Of these, we must first address the arguments that the Attorney General and the Commissioner are not proper parties to this action because if they are correct, we lack original jurisdiction over this matter. *See* 42 Pa.C.S. § 761(a).

Pursuant to § 5506 of the Act, the Attorney General is authorized to commence an action to enjoin any violation of the Act. Specifically, § 5506 provides, in pertinent part:

> An action to enjoin or abate a violation of this chapter may be brought in the name of the Commonwealth of Pennsylvania by the Attorney General, the district attorney of the county concerned or the solicitor of the municipality in which the adult oriented establishment is located.

68 Pa.C.S. § 5506(a). Despite this specific authorization to enforce the Act, the Attorney General contends that the possibility that he would actually prosecute a case under the Act is so unlikely that an actual case or controversy is not present for purposes of

jurisdiction and, therefore, he should be dismissed from the case. According to the Attorney General, the Commonwealth Attorneys Act[6] is the sole source of his authority to investigate and prosecute cases, and under that statute, the conditions which must be present before he can prosecute a violation of the Act are unlikely to occur. *See* 71 P.S. § 732–205. In support of this contention, the Attorney General cites, *inter alia, Pennsylvania Gamefowl Breeders Ass'n v. Commonwealth,* 122 Pa.Cmwlth. 52, 551 A.2d 361 (1988) and *Commonwealth v. Carsia,* 512 Pa. 509, 517 A.2d 956 (1986). We do not find either of these cases, or the other cases relied upon, supportive of the Attorney General's position.

In *Pennsylvania Gamefowl Breeders Ass'n,* petitioners sought a declaration that certain amendments to 18 Pa.C.S. § 5511 were unconstitutional. The Attorney General and the Commonwealth (collectively the "Commonwealth") were named as respondents. The Commonwealth filed preliminary objections alleging that the petition for review failed to aver a sufficient controversy such that dismissal of the action against the Commonwealth was warranted. The only allegation in the petition regarding the Attorney General was that he " '[was] charged with the execution and enforcement of the penal laws of the Commonwealth.' " 551 A.2d at 363. There, we held that merely pleading the general duty to uphold the laws of the Commonwealth failed to set forth a sufficient controversy to confer jurisdiction upon this court. *Id.*

Although *Pennsylvania Gamefowl Breeders Ass'n* demonstrates that a general obligation to enforce the law does not constitute a sufficient basis for jurisdiction, that general obligation is not the basis for jurisdiction in the instant case. Unlike the statute at issue in *Pennsylvania Gamefowl Breeders Ass'n,*

---

**5.** This court may only sustain preliminary objections in the nature of a demurrer where the complaint is clearly insufficient to establish a right to relief. In ruling on such preliminary objections, all doubts must be resolved in favor of overruling the demurrer. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985). Similarly, a party is entitled to summary relief if there are no genuine issues of material fact and the right to judgment is clear

as a matter of law. In ruling on the application, the court must view the evidence in the light most favorable to the non-moving party. *Hennessey v. Pennsylvania Bd. of Pardons,* 655 A.2d 218, 219 (Pa.Cmwlth.1995).

**6.** Act of October 15, 1980, P.L. 950, §§ 101–506, as amended 71 P.S. §§ 732–101 to 732–506.

this Act specifically authorizes the Attorney General to enforce its provisions and, therefore, more than a "general obligation" is present. Accordingly, *Pennsylvania Gamefowl Breeders Ass'n* is not controlling, and it does not command the dismissal of the Attorney General from this action.

Next, in *Carsia*, the Pennsylvania Supreme Court addressed the issue of whether the authority of the Attorney General, as set forth in Article 4, § 4.1 of the Pennsylvania Constitution, is circumscribed by § 205 of the Commonwealth Attorneys Act, 71 P.S. § 732–205, such that the Attorney General does not possess any additional inherent powers derived from common law. Article 4, § 4.1 of our Constitution states, in pertinent part, as follows:

> An Attorney General shall be chosen by the qualified electors of the Commonwealth.... [H]e shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties *as may be imposed by law.*

(Emphasis added). The Supreme Court interpreted the phrase "as may be imposed by law" as indicative of "an extension of power to the legislature to statutorily define and regulate the powers and duties of the Attorney General." 512 Pa. at 513, 517 A.2d at 958. The court further stated that:

> The General Assembly utilized that grant of constitutional powers in 1980, and enacted the Commonwealth Attorneys Act. That Act made it clear that the powers of the state Attorney General are no longer an emanation from some bed of common law precepts, but are now strictly a matter of legislative designation and enumeration.

*Id.* Although the Supreme Court also stated that the Commonwealth Attorneys Act is the sole source of the Attorney General's authority, that statement cannot be taken out of context in complete disregard of the court's analysis.

In *Carsia*, the Supreme Court was not addressing whether the Attorney General had power to act pursuant to a specific statutory grant of authority; rather, the court was faced with the issue of whether the Attorney General had retained any common law powers after the enactment of the Commonwealth Attorneys Act. The court clearly concluded that the Attorney General's powers stem from legislative enactment. In support of this conclusion, the court quoted from the Final Report of the Joint State Government Commission Task Force on the Office of the Elected Attorney General, which provided that "there was substantial consensus for the concept that '[l]egislation enacted by the General Assembly is the exclusive source of the powers and duties of the elected Attorney General pursuant to Article IV, Section 4.1....'". 512 Pa. at 513, 517 A.2d at 958.

In other words, *Carsia* demonstrates that the Attorney General's authority is that which is established by legislation. Therefore, we hold that the limitations placed upon the Attorney General by the Commonwealth Attorneys Act do not apply in the present case because § 5506 provides the Attorney General with an independent source of authority.[7] Accordingly, we reject the Attorney General's claim that his authority is too attenuated to confer jurisdiction over him. Therefore, we conclude that he is a proper party to this action, and thus that this action falls within our original jurisdiction. Based upon this conclusion, as well as our ultimate resolution of the merits, we need not reach the Commissioner's claim that he also is an improper party to this matter.

Next, as to the remainder of the preliminary objections, we note that respondents' demurrers are based upon essentially the same analysis and conclusions employed and reached by this court in denying petitioners' motion for preliminary injunction. *See Golden Triangle I.* We will not restate that analysis and those conclusions here, but simply adopt them by reference and turn to those arguments which were not raised in connection with the motion for preliminary injunction.

■ To begin, petitioners again assert that the Act is an impermissible content-based

---

7. Even if we had concluded that § 5506 conflicted with the provisions of the Commonwealth Attorneys Act, § 5506 would prevail to the extent that it was inconsistent, as the Act is the more recently enacted statute of the two enactments. *See* 1 Pa.C.S. § 1936.

restriction on protected speech (in violation of Article 1, § 7 of the Pennsylvania Constitution) because it applies only to adult-oriented establishments and it differentiates between types of sexually explicit materials. In support of this argument, petitioners now cite *Commonwealth v. Wadzinski,* 492 Pa. 35, 422 A.2d 124 (1980). There, a first amendment challenge was made to a statutory provision pursuant to which political candidates who intended to publish a political advertisement referring to an opponent during the final days of the campaign period were required to give the opponent reasonable notice of the ad, in order to allow the opponent to publish a reply at the same time. A violation of the statute resulted in criminal penalties as well as penalties imposed under the Election Code.

The Commonwealth defended that statute as a valid time, place and manner regulation which did not discriminate among speakers or political ideas. The Commonwealth also argued that any incidental effect that the statute had on protected speech was justified by the state's important interest in enabling voters to make an informed decision. The Supreme Court disagreed with the Commonwealth's position on several grounds. First, the court concluded that unlike valid time, place and manner regulations, the statute was likely to inhibit the timing and content of a candidate's final communications to the public or lead to total suppression of the political message. Second, the court concluded that the statute was not content neutral as alleged because it penalized only character-oriented ads as opposed to issue-oriented ads and, therefore, it gave preference to a particular type of political message. 492 Pa. at 48–49, 422 A.2d at 131. Finally, the statute was found to substantially burden the ability to engage in protected political speech. *Id.* at 49, 422 A.2d at 132.

Petitioners' attempt to analogize that statute's impermissible distinction between character-oriented ads and issue-oriented ads with the Act's limited application to adult-oriented establishments [8] does not persuade us that the Act is impermissibly content based. *Wadzinski* focuses solely upon the regulation of political speech. Political speech is a special type of expression which is afforded the greatest protection under the First Amendment,[9] and any regulation thereof is subject to the "most exacting scrutiny." 492 Pa. at 44, 422 A.2d at 129. Unlike political speech, however, adult entertainment is not afforded the highest level of protection. *See generally Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d 123, 130 (3d Cir.1993) [citing *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)]. Indeed, the very content of sexually explicit materials has been held to be a legitimate basis for the government to place such in a different classification from other types of expression. *Id.* Moreover, when the regulation of sexually explicit materials is aimed at the amelioration of the adverse secondary effects of adult entertainment (as opposed to suppression of the speech itself), the regulation is deemed to be content neutral. *Id.*; *Golden Triangle I,* 689 A.2d at 981–82.[10] Thus, because political expression is a category of speech vastly different from adult entertainment, the standards, policies and analysis employed by the court in *Wadzinski* do not apply to the present case. Therefore, we do not find petitioners' reliance on *Wadzinski* determinative that the Act is impermissibly content based. To the contrary, we conclude that the Act's specific application to adult-oriented establishments and sexually explicit materials of a certain nature is proper, as such categories were found to be asso-

8. For instance, the Act does not apply to sexually explicit materials which are medical or educational in nature. 68 Pa.C.S. § 5502.

9. Unlike the statute at issue in *Wadzinski,* statutes which have imposed restrictions on adult entertainment similar to those of the Act have withstood *First Amendment* challenge. *Golden Triangle I,* 689 A.2d at 979 n. 5.

10. A close review of *Wadzinski* also reveals that the restrictions at issue are more properly characterized as prior restraints than time, place and manner regulations. As the court noted, the restrictions imposed by the statute operate, in certain circumstances, to totally prohibit political speech.

ciated with the adverse behavior and conditions sought to be remedied. *See Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 52, 106 S.Ct. 925, 931, 89 L.Ed.2d 29 (1986). Moreover, if the Act's provisions were not limited to that category of establishments which are associated with the adverse secondary social effects, the Act would fail to be narrowly tailored, a requirement which must be met in order for a regulation affecting protected speech to pass as a valid time, place and manner regulation. *Golden Triangle I,* 689 A.2d at 981; *Renton,* 475 U.S. at 50, 106 S.Ct. at 930; *Mitchell,* 10 F.3d at 130. Accordingly, we again conclude the Act is content neutral.

Next, petitioners revisit *Insurance Adjustment Bureau v. Insurance Comm'r,* 518 Pa. 210, 542 A.2d 1317 (1988), arguing that it places the burden upon the Commonwealth, as opposed to petitioners, to establish the constitutionality of the Act. Part of this burden, petitioners allege, is to demonstrate that any restriction on speech has been accomplished in the *least intrusive* manner. According to petitioners, since the record is devoid of any evidence to establish that less intrusive means of accomplishing the Act's goals were tried and proved unavailing, the respondents' preliminary objections should be denied and judgment should be entered in petitioners' favor. We disagree.

■ Petitioners correctly note that the burden to establish the constitutionality of the Act rests with respondents at this stage of the proceedings.[11] However, as we held in *Golden Triangle I,* the least restrictive or least intrusive standard set forth in *Insurance Adjustment Bureau* is inapplicable to the present case because a prior restraint is not involved. 689 A.2d at 982–83. Therefore, petitioners' repeated declaration that this is the standard against which the Act should be judged is simply incorrect. The proper standard to be applied is whether the regulation is narrowly tailored to serve a significant or substantial government interest and whether it leaves open ample alternative

channels of communication. *Golden Triangle I,* 689 A.2d at 981 (citing *Mitchell,* 10 F.3d at 130). Therefore, respondents are not required to offer evidence that other "less intrusive" methods are available to remedy the adverse secondary effects of adult entertainment. In demonstrating the constitutionality of the Act, the Commonwealth does not have to establish that the Act's restrictions are the best method available for addressing the problem. "It is not [the court's] function to appraise the wisdom of [the legislature].... [It] must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Renton,* 475 U.S. at 52, 106 S.Ct. at 931 (quoting *Young,* 427 U.S. at 71, 96 S.Ct. at 2453). Therefore, the absence of such evidence does not defeat respondents' preliminary objections as alleged.

■ Finally, in opposition to the preliminary objections, petitioners aver for the first time that while prevention of the spread of communicable diseases such as AIDS, is a legitimate interest "in the abstract," respondents have not offered any evidence to support the governmental interest articulated in the Act or demonstrated that petitioners' establishments are contributing to the problem sought to be remedied. Related to this argument is petitioners' contention that genuine issues of fact remain, thereby precluding the entry of judgment in favor of respondents. One of the issues identified is whether petitioners' business has dropped since the doors have been removed from their booths because constitutional rights have been chilled. We will address these contentions seriatim.

First, although the governmental interest underlying the Act is clearly set forth in the statute, petitioners imply that evidence of record is required to establish that the stated legislative purpose is genuine. The interest stated is to protect and preserve the health, safety and welfare of both the patrons of adult-oriented establishments and the citizens of Pennsylvania by discouraging sexual

---

11. *See Insurance Adjustment Bureau,* 518 Pa. at 219 n. 5, 542 A.2d at 1321 n. 5; *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). We note that this burden is in distinction to that born in the context of their motion for a preliminary injunction where petitioners had the burden of demonstrating that their right to relief was clear. *See Golden Triangle I,* 689 A.2d at 978.

activity and prostitution from occurring in such establishments, as activity of that nature is associated with the spread of communicable diseases, including AIDS. *See* 68 Pa.C.S. § 5501. Governmental attempts at reducing the adverse secondary social effects of adult entertainment are recognized as furthering the government's substantial interest in protecting the health, safety and welfare of its citizens. *Pap's A.M. v. City of Erie*, 674 A.2d 338, 343 (Pa.Cmwlth.1996), *alloc. granted*, 547 Pa. 9, 688 A.2d 168 (1997); *Renton*, 475 U.S at 48, 106 S.Ct. at 929. Therefore, the Act's articulated interest or purpose is a legitimate one.

■ The only imaginable evidence which could be offered to support or undermine this interest would be the statements of individual legislators made during the enactment process. However, as we noted in *Pap's A.M.*, "[s]tatements made by lawmakers during the enactment procedure are not dispositive of the legislative intent," and "the legislative history cannot act as a rationale for contradicting the plain meaning of the [statute itself]." 674 A.2d at 343 [citing 1 Pa.C.S. § 1921(c)(7); *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983); *Borough of West Chester v. Taxpayers of the Borough of West Chester*, 129 Pa.Cmwlth. 545, 566 A.2d 373 (1989) ].[12] Therefore, because the stated purpose of the Act is clear and that purpose serves a recognized substantial government interest, we hold that respondents do not have to offer evidence to substantiate that interest in order to establish the constitutionality of the Act.

■ Likewise, we also conclude that in demonstrating that the Act is a constitutional, content-neutral time, place and manner regulation, it is not necessary for the Commonwealth to demonstrate that petitioners' individual establishments are being used for illicit sexual activity. In *Renton*, the United States Supreme Court specifically addressed this argument. There, in the context of a First Amendment challenge to an ordinance prohibiting adult theaters in certain residential zones, the court held that it is appropriate and constitutional for the legislative body to rely on the findings, studies or experiences of other governmental bodies when enacting legislation as long the evidence relied upon is relevant to the problem sought to be addressed. 475 U.S. at 51, 106 S.Ct. at 930–31. *Accord Pap's A.M.*, *Mitchell* and *Postscript Enterprises v. City of Bridgeton*, 905 F.2d 223 (8th Cir.1990).

A review of the Act's preamble, entitled "Legislative findings and intent" reveals that the General Assembly relied on statistics and studies performed in communities in the Commonwealth, the United States and Delaware which indicated that 1) the closed booths, studios and cubicles in adult entertainment establishments are being used to engage in sexual activity, 2) such activities contribute to the creation of unhealthy conditions and the spread of communicable diseases, and 3) the regulation of such establishments discourages the commission of such sexual acts, thereby promoting the health, safety and welfare of patrons and customers. 68 Pa.C.S. § 5501(a). Based upon the General Assembly's specific finding that adult entertainment as a class causes adverse secondary social effects, the Commonwealth does not have to produce independent evidence either to confirm the conclusions of other jurisdictions or to demonstrate that similar unhealthy and illegal activities take place on petitioners' premises as well. See *Pap's A.M.*, 674 A.2d at 344; *Renton*, 475 U.S. at 51, 106 S.Ct. at 930–31; *Mitchell*, 10 F.3d at 133–34; *Postscript Enterprises*, 905 F.2d at 226. As the court aptly stated in *Postscript Enterprises*, for purposes of a constitutional review of legislation regulating adult entertainment, it is not unreasonable for legislative bodies "to assume that human

---

**12.** In *Pap's A.M.*, a city ordinance proscribing public nudity was challenged on the basis that, *inter alia*, it was enacted to promote the morality of the city, which was not a substantial government interest. Support for the allegedly insufficient motive was found in the statements of various council members made during the legislative process. In light of the fact that the purpose actually articulated in the ordinance was unambiguous and "substantial" (live nude entertainment adversely impacts public health, safety and welfare by, among other things, contributing to the spread of sexually transmitted diseases), we held that such statements could not be used as a means to challenge the clearly stated intent of the regulation. 674 A.2d at 343.

nature—at least in respect of such basic matters as human sexuality and its commercial exploitation—will not vary greatly between generally comparable metropolitan areas within even so heterogeneous a society as that of twentieth century America." *Id.*

 Finally, we address petitioners' contention that before the constitutionality of the Act can be determined, evidence must be offered as to why its business has dropped since the doors have been removed from the booths, studios and cubicles. We disagree. Even if the lawful viewing of videos in the booths has decreased as a result of the imposition of the Act's lighting and open door requirements (as opposed to the lack of privacy to use the booths for sexual activity), this would not render the Act unconstitutional. A content-neutral regulation is valid if it meets the requirements outlined in *Golden Triangle I,* which include the existence of alternative avenues of communication. 689 A.2d at 981. Thus, as long as the regulation satisfies the requirements for validity, any incidental impact that it has on the exercise of constitutional rights is permissible. *Mitchell,* 10 F.3d at 131. Here, the Act only changes the environment in which sexually explicit materials may be viewed in *one location;* other venues or channels for viewing such materials remain available, as the customer is free to purchase or rent the videos and view them in another location if more privacy is desired. Accordingly, the fact that petitioners' business may have been affected because of customers' desires to view the videos in a more private setting would not alter the determination that the Act is constitutional.

Accordingly, after consideration of the above arguments, we conclude that the averments of the amended petition for review are insufficient to entitle petitioners to the relief requested, i.e., a declaration that the Act is unconstitutional and an injunction against its enforcement. The preliminary objections are granted and petitioners' amended petition is dismissed.

With respect to respondents' motions for summary relief and petitioners' motion for summary judgment, such are dismissed as moot.

## ORDER

AND NOW, this 12th day of September, 1997, the preliminary objections of respondents, Hon. Thomas Corbett and Col. Paul Evanko, asserting that this court lacks jurisdiction over them are denied. The remainder of respondents' preliminary objections in the nature of a demurrer, including those of Hon. Thomas Corbett and Col. Paul Evanko, are granted, and petitioners' amended petition for review is dismissed.

AND, respondents' motions for summary relief are dismissed as moot.

AND, petitioners' motion for summary judgment is dismissed as moot.

FRIEDMAN, J., did not participate in the decision in this case.