PAP'S A.M. t/d/b/a Kandyland, Appellant,

v.

The CITY OF ERIE, Joyce A. Savocchio, Chris E. Maras, Mario S. Bagnoni, Robert C. Brabender, Denise Robison, and James N. Thompson, in their official capacities.

PAP'S A.M. t/d/b/a Kandyland

v.

The CITY OF ERIE, Joyce A. Savocchio, Chris E. Maras, Mario S. Bagnoni, Robert C. Brabender, Denise Robison, and James N. Thompson, in their official capacities, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1995.

Decided March 27, 1996.

**340**

Gerald J. Villella, Deputy Solicitor, for Appellees, City of Erie, et al.

Philip B. Friedman, for Appellant, PAP's A.M.

Before DOYLE and SMITH, JJ., and MIRARCHI, Senior Judge.

DOYLE, Judge.

This case involves cross appeals by Pap's A.M. d/b/a/ Kandyland (Paps) and the City of Erie, Joyce A. Savocchio, Chris E. Maras, Mario S. Bagnoni, Robert C. Brabender, Denise Robison, and James N. Thompson, in their official capacity as members of City Council for Erie (collectively, the City), from an order of the Court of Common Pleas of Erie County which granted Paps' permanent injunction and declared the City's public indecency Ordinance 75–1994 unconstitutional.

On September 28, 1994, City Council for the City of Erie enacted a public indecency Ordinance 75–1994 (Ordinance), effective October 12, 1994.[1] The portion of the Ordinance which is challenged is Section 1, subsection (c) which makes it a summary offense for anyone to appear in public in a state of nudity. Thus, this section of the Ordinance requires female erotic dancers to wear "pasties" and "G-strings."

Paps is the operator of "Kandyland," an establishment which features nude erotic dancing.[2] On October 14, 1994, Paps filed a complaint in equity requesting a declaratory

---

1. The Ordinance states in relevant part:

   Section 1....
   1. A person who knowingly or intentionally, in a public place:
      a. engages in sexual intercourse
      b. engages in deviate sexual intercourse as defined by the Pennsylvania Crimes Code
      c. appears in a state of nudity, or
      d. fondles the genitals of himself, herself or another person commits Public Indecency, a Summary Offense.
   2. "Nudity" means the showing of the human male or female genital, pubic area or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple; the exposure of any device, costume, or covering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum anal region or pubic hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device simulates and gives the realistic appearance of nipples and/or areola.
   3. "Public Place" includes all outdoor places owned by or open to the general public, and all buildings and enclosed places owned by or open to the general public, including such places of entertainment, taverns, restaurants, clubs, theaters, dance halls, banquet halls, party rooms or halls limited to specific members, restricted to adults or to patrons invited to attend, whether or not an admission charge is levied.
   4. The prohibition set forth in subsection 1(c) shall not apply to:
      a. Any child under ten (10) years of age; or
      b. Any individual exposing a breast in the process of breastfeeding an infant under two (2) years of age.
   (Section 1 of Ordinance 75–1994.)

2. Alcoholic beverages are not served at Kandyland, but patrons are permitted to bring their own. Such an establishment is commonly referred to as a "bottle club."

judgment declaring the Ordinance unconstitutional, and Paps further requested injunctive relief and attorney fees.[3] On October 17, 1994, Paps filed a petition for a preliminary injunction to prevent the enforcement of the Ordinance, which the court denied. On January 18, 1995, after the final hearing was held relative to Paps' permanent injunction request, the court granted the permanent injunctive relief, declaring the Ordinance unconstitutional as facially overbroad, but denied Paps' request for attorney fees.

The City appealed alleging that (1) Paps does not have standing to challenge the Ordinance; (2) the Ordinance is not violative of Paps' right to free speech under the First Amendment of the Federal Constitution or Article 1, Section 7 of the Pennsylvania Constitution; (3) the Ordinance may be interpreted in a restrictive manner so as to avoid being deemed facially overbroad; (4) Pennsylvania's obscenity statute does not preempt the Ordinance; and (5) the named elected officials are not proper parties in the litigation. Paps' appeal asserts that the court erred in failing to award it attorney fees.

### STANDING

■ The City avers that Paps has no standing to challenge the validity of the Ordinance, since *its* constitutional rights are not at issue, because the Ordinance only applies to the non-speech element of the nude dancing.

■ It is well established that a First Amendment constitutional challenge based upon the doctrine of overbreadth is an exception to traditional rules of standing. *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir.1994). Parties whose activities could properly be proscribed by an ordinance or statute may attack it on its face as being overly broad. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *City of*

*Philadelphia v. Cohen*, 84 Pa.Cmwlth. 200, 479 A.2d 32 (1984). The impetus for granting standing liberally in First Amendment cases is to ensure that the free exchange of ideas will not be inhibited. *Broadrick.*

Here, Paps has challenged the Ordinance as not only being unconstitutional by infringing upon its own First Amendment rights, but also as being impermissibly broad, impinging upon the rights of other parties whose constitutionally protected speech may be affected, *i.e.*, theaters. Thus, Paps has standing.

### FIRST AMENDMENT—FREEDOM OF SPEECH

■ In Pennsylvania, a statute enjoys a strong presumption of constitutionality, and will not be found to be invalid unless it clearly, palpably and plainly violates the constitution. *Patton v. Republic Steel Corp.*, 342 Pa.Superior Ct. 101, 492 A.2d 411 (1985). The party challenging the statute has the burden to prove that it is invalid. *Id.*

The issues this Court must address are whether the Ordinance violates Paps' right to freedom of expression as guaranteed by the First Amendment to the United States Constitution[4] or Article 1, Section 7 of the Pennsylvania Constitution.

### FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

■ The City argues that under the holding of the United States Supreme Court's decision in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), this Ordinance does not violate the First Amendment because it is only restricting conduct, not expression, and any slight infringement on First Amendment rights is permissible to protect the public from the secondary effects associated with the nude dancing. The City, as additional support for its proposition, cites *United States v.*

3. Although not parties in the case, the Erie Playhouse and the Roadhouse Theater were permitted to address the court in the final hearing held on December 21, 1994 with consent of the parties.

4. The federal constitutional guarantee of freedom of expression is applicable to states through the Fourteenth Amendment's due process clause. *Long v. 130 Market Street Gift & Novelty of Johnstown*, 294 Pa. Superior Ct. 383, 440 A.2d 517 (1982).

*O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

In *O'Brien,* the Supreme Court stated that to determine if a statute violates the First Amendment, the court must examine (1) whether the statute or regulation is within the constitutional power of the government to regulate; (2) if it furthers an important or substantial government interest; (3) if the government interest is related or unrelated to the suppression of free expression; and (4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential for the furtherance of that interest. *Id.* at 376–77, 88 S.Ct. at 1678–79.

Paps, on the other hand, argues that the four-part test enunciated in *O'Brien,* which the Supreme Court relied upon in *Barnes,* was not satisfied in this case because this Ordinance was merely enacted to promote morality upon the public, and not to combat secondary effects.

*Barnes,* a plurality decision,[5] involved the constitutionality of an Indiana statute, which is virtually identical to the one in our case.[6] The challengers to the statute were owners and operators of bars that featured nude dancing as entertainment, and they challenged the statute as being violative of the First Amendment of the United States Constitution.[7]

The opinion of the Chief Justice stated that while nude dancing is expressive conduct within the peripheral boundaries of First Amendment protection, it is only marginally protected.[8] Chief Justice Rehnquist

also wrote that applying the four-part test in *O'Brien* to the facts before it, the Indiana indecency statute was constitutional because it furthered a substantial government interest of protecting morality and societal order. The Ordinance reflected the public's disapproval of nudity in public. Moreover, the opinion stated that the restrictions of the statute were unrelated to the suppression of freedom of expression since it was **public nudity** the states wish to prevent, whether or not it is combined with expression, not the message. *Barnes,* 501 U.S. at 570–71, 111 S.Ct. at 2462–63.

The Chief Justice also found that public nudity is not per se expression. The requirement that the dancers wear "pasties" and "G-strings" does not regulate the communicative aspects of the dancing, but the conduct and the message of eroticism is still portrayed although in a less graphic manner. *Id.* Thus, the state's substantial interest in protecting the public health, safety and morals is enough to justify the slight infringement of First Amendment freedom of expression rights.

Justice Souter, concurring, agreed that nude dancing is afforded some minimal First Amendment rights, but disagreed on how the *O'Brien* test applied. He based his concurrence "not on the possible sufficiency of society's moral views to justify the limitations at issue, but on the State's substantial interest in combating the secondary effects of adult entertainment establishments of the sort typified by respondents' establishments."

5. Chief Justice Rehnquist wrote for Justice O'Connor and Justice Kennedy. Justice Souter and Justice Scalia concurred separately. Justice White wrote the dissent, to which Justice Marshall, Justice Blackmun and Justice Stevens joined.

6. The Indiana statute states in pertinent part:

A person who knowingly or intentionally in a public place:
(1) engages in sexual intercourse;
(2) engages in deviate sexual conduct;
(3) appears in a state of nudity; or
(4) fondles the genitals of himself or another person; commits public indecency, a class A misdemeanor.
(b) "Nudity" means the showing of the human male or female genitals, pubic area, or but-

tocks with less than a fully opaque covering, the showing of the female breast with less than a fully opaque covering of any part of the nipple, or the showing of covered male genitals in a discernibly turgid state.
Ind.Code § 35–45–4–1.

7. The Indiana statute was also challenged as being unconstitutionally overbroad.

8. *Mitchell v. Commission on Adult Entertainment Establishments of the State of Delaware* 10 F.3d 123, 130 (3d Cir.1993) (total suppression of erotic materials which have some artistic value will not be tolerated. "[I]f the regulation of sexually explicit materials is aimed primarily at suppression of First Amendment rights, then it is thought to be content-based and so presumptively violates the First Amendment").

*Barnes,* 501 U.S. at 582, 111 S.Ct. at 2468–69 (citing *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). Justice Scalia also concurred in the result, but stated that nude dancing has no First Amendment protection, and the state need only demonstrate that a rational basis exists for the statute, *i.e.,* it was enacted for the health, welfare, and safety of the public.

■ "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments in the narrowest grounds.'" *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citing *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Applying the *Marks* rule, Justice Souter's opinion articulates the holding of the Court since it shares with the majority of the Justices a common underlying approach and, since Justice Souter ruled on the narrowest ground, his concurrence therefore is the law. *Triplett Grille, Inc.* Thus, following Justice Souter's reasoning, an ordinance regulating speech can survive scrutiny if it satisfies the test in *O'Brien,* and is designed to prevent secondary effects associated with adult entertainment. *Barnes; O'Brien; Triplett Grille, Inc.*

■ Paps argues that the Ordinance does not meet the requirements of *O'Brien* and *Barnes,*[9] because the Ordinance was enacted to promote the morality of the City of Erie, which under the analysis enunciated by Justice Souter is not a substantial government interest. Paps points to some statements made by members of City Council during the discussion of this Ordinance as support for its contention that the Ordinance was only enacted to preserve the morals of the community.

However, the purpose underlying the enactment of the Ordinance is revealed in the Ordinance itself. The Ordinance states in relevant part:

WHEREAS, Council specifically wishes to adopt the concept of public indecency prohibited by the laws of the State of Indiana, which was approved by the Supreme Court in *Barnes vs. Glen Theatre Inc.,* for the purpose of limiting a recent increase in nude live entertainment within the City, which activity adversely *impacts and threatens to impact the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects.*

(City of Erie Ordinance 75–1994.) (Citation omitted) (Emphasis added.)

■ Although some members of City Council voiced their personal reasons of morality as the impetus for their support of the Ordinance, (Reproduced Record (R.R.) at 32a–44a),[10] the Ordinance clearly and unambiguously states that it was enacted to prevent the commission of various sex-related crimes associated with nude dancing; that is, secondary effects. Statements made by lawmakers during the enactment procedure are not dispositive of the legislative intent, *Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983); *see also* 1 Pa.C.S. § 1921(c)(7). Furthermore, the legislative history cannot act as a rationale for contradicting the plain meaning of the words contained in a statute itself. *Borough of West Chester v. Taxpayers of the Borough of West Chester,* 129 Pa.Cmwlth. 545, 566 A.2d 373 (1989).

■ Governmental attempts at controlling secondary effects associated with adult entertainment serve the government's substantial interest in promoting the health, safety and welfare of the people. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106

---

**9.** It is interesting to note that in *Barnes,* Justice Souter assumed that the legislators took the secondary effects into consideration.

**10.** Mr. Thompson, Mr. Brabender, Mr. Bagnoni, and Mr. Maras said that they support the Ordinance because of their desire to instill good values on the public. Mrs. Robinson, who was absent from the meeting, stated in a letter that she supported the Ordinance to protect the morals of the community. (Transcript of the videotape of City Council's 9/28/94 meeting; R.R. at 32a–44a.)

S.Ct. 925, 89 L.Ed.2d 29 (1986). Thus, the first prong of *O'Brien,* which requires that the restriction be within the constitutional power of the state, is met.

■ The second prong of the *O'Brien* test, that the restriction furthers a substantial government interest, is also satisfied. The Supreme Court in *City of Renton* stated that the government was not required to provide specific data which demonstrates that harmful secondary effects correlate to the presence of establishments which provide adult entertainment. *City of Renton; Mitchell,* 10 F.3d at 133 ("[t]he First Amendment does not require a city before enacting such an ordinance to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses"). The city only needs to show that adult entertainment establishments is a class of conduct which causes the unwanted secondary effects the statute regulates. *City of Renton; Mitchell.*

Here, the type of activity at issue is the same exact variety as the restricted entertainment in *Barnes;* therefore, it is proper for this Court to find that the same harmful secondary effects which were found to be caused by the nude erotic dancing in *Barnes,* will also occur in this case, and that this Ordinance furthers the City's substantial interest in safeguarding the public from these harmful secondary effects. Thus, the second prong of *O'Brien* is met.

The third requirement of *O'Brien* is that the government's interest must be unrelated to the suppression of free expression. In *Barnes,* Justice Souter, along with a majority of the Court, found that a statute which bans public nudity is not related to the suppression of the erotic message, that is, the expressive component of the dance. Justice Souter states that the restriction directly relates to the prevention of the secondary effects.[11] *Barnes; Compare Berg v. Health & Hospital Corporation of Marion County,* 865 F.2d 797 (7th Cir.1989) (restrictions on the types of doors or openings to individual entertainment booths merely regulate the non-communicative aspects of the erotic activity and thereby impose only an incidental burden on plaintiff's first amendment rights); *Mini Spas, Inc. v. South Salt Lake City Corp.,* 810 F.2d 939 (10th Cir.1987) (city's interest in regulating prostitution through an ordinance prescribing a dress code for massage parlors was unrelated to inhibiting freedom of expression).

Here, like in the statute in *Barnes,* the requirement that the dancers wear "pasties" and "G-strings" is not related to the suppression of the erotic expression, but is related to the avowed purpose of safeguarding the public from the harmful secondary effects associated with adult entertainment.

The last prong of *O'Brien* is that the restriction be no greater than is essential for the furtherance of the government interest. Such restriction is narrowly tailored "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985). Again, as was found in *Barnes,* we hold that requiring dancers to don "pasties" and "G-strings" infringes on the dancers' expression only inconsequentially. The erotic message is still able to be conveyed; it is just less graphic, and therefore, the prohibition of public nudity is narrowly tailored. *Barnes.* Following the sound reasoning of Justice Souter in *Barnes,* we similarly conclude that the City's Ordinance is narrowly tailored.

Accordingly, the Ordinance satisfies the requirements of *O'Brien* and does not violate Paps' First Amendment rights, despite the incidental limitations on some expressive activity.[12]

---

11. Chief Justice Rehnquist states that the ban on public nudity is unrelated to freedom of expression because the evil the government pursues is public nudity, whether or not it is combined with expressive conduct. *Barnes,* 501 U.S. at 570–71, 111 S.Ct. at 2462–63.

12. *See Turner v. State,* 650 N.E.2d 705 (Ind.Ct. App.1995), *petition for cert. filed,* (Jan. 18, 1996); *State ex rel. Miller v. Private Dancer,* 83 Ohio App.3d 27, 613 N.E.2d 1066 (1992).

### Article 1, Section 7 of the Pennsylvania Constitution

It is clear that the federal Constitution affords the minimum protection of individual rights, and a state may, if it so chooses, interpret a state constitution to afford greater protection of fundamental rights. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991).

Article 1, Section 7 of the Pennsylvania Constitution provides protection for the "free communication of thoughts ... and every citizen may freely speak, write and print on any subject ... being responsible for the abuse of that liberty." Article 1, Section 7 of the Pennsylvania Constitution. The Pennsylvania Constitution provides essentially the same protection of expression as does the United States Constitution, and to that extent, what we have concluded above regarding the federal Constitution would also apply to our own Pennsylvania Constitution. *See Long v. 130 Market Street Gift & Novelty of Johnstown*, 294 Pa.Superior Ct. 383, 440 A.2d 517 (1982). Neither constitution provides for unfettered freedom of expression. The Pennsylvania Constitution, however, does differ in that it has codified the proscription of the imposition of prior restraints on speech, whereas pursuant to the federal Constitution, prior restraints are prohibited in most situations based upon the common law. *See Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance, Co.*, 512 Pa. 23, 515 A.2d 1331 (1986).

A prior restraint in general terms is a prohibition on speech in advance of its publication or expression. *United States v. Schiavo*, 504 F.2d 1 (3d.Cir.) *cert. denied*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974). The restraint must unduly burden the expression to be violative. *Id.* The instant case does not involve a prior restraint because: (1) the Ordinance is not regulating the expressive element of the dance, but rather, the conduct or manner of

the dance; and (2) the requirement that the dancers wear "pasties" and "G-strings" is not unduly burdensome.

Accordingly we hold that in this case that the Ordinance does not violate Section 7 of Article 1 of the Pennsylvania Constitution.

### OVERBREADTH

A statute which implicates First Amendment freedoms of expression may be declared unconstitutional where the regulations are overbroad by significantly compromising clearly recognized First Amendment rights. *Broadrick*, 413 U.S. 601, 93 S.Ct. 2908 (1973). The overbreadth doctrine is "strong medicine" which is used only sparingly and only as a last resort. *Id. R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). "[A] regulation's invalidation threshold for overbreadth increases when the activity regulated moves from speech to conduct having an incidental impact on First Amendment rights." *City of Philadelphia v. Cohen*, 84 Pa.Cmwlth. 200, 479 A.2d 32, 35 (1984); *see also Mitchell.* "[A] statute is not overbroad merely because its application implicates protected activity." *Marie Guy v. Woods*, 104 Pa.Cmwlth. 585, 522 A.2d 193, 195 (Pa. Cmwlth.1987).

Paps successfully argued below that the Ordinance was unconstitutional on its face because it is overbroad, since it proscribes all public nudity, even live performances with serious literary, artistic or political value.[13] Paps relies heavily on *Triplett Grille, Inc.* as support for its argument. The City, on the other hand, appears to argue that the Ordinance is not overly broad, because it is subject to a limiting interpretation, based upon the holding in *Barnes*.

*Triplett Grille, Inc.* involved an Akron, Ohio, indecency ordinance, which, like the Ordinance at issue here and in *Barnes*, banned public nudity. An adult establishment which featured nude dancing chal-

---

**13.** Bill Morton, a representative of the Erie Playhouse and the Roadhouse Theater, informed the lower court during the final hearing that he fears that the Ordinance will adversely affect the arts community by inhibiting certain types of artistic performances at the playhouse which involve some nudity. (Transcript of 12/21/94 final hearing at 18–19; R.R. at 173a–74a.)

lenged the ordinance, *inter alia*, on its face as being overbroad.

The Federal Court of Appeals for the Sixth Circuit held that although the ordinance had been enacted in part due to the city council's concern for the secondary effects, it was unconstitutional because the ordinance prohibited all public nudity including that related to literary, artistic and political value, and made no attempt to regulate only those expressive activities associated with the secondary effects, and, therefore, swept too broadly. *Triplett Grille, Inc.* "Because [Akron] failed to present evidence linking expressive nudity in 'high-culture' entertainment [theatrical performances such as, "Hair" or "Equus"] to harmful secondary effects, we conclude that the ordinance infringes speech protected by the First Amendment." *Triplett Grille, Inc.*, 40 F.3d at 136.

■ The court continued and stated: "While loath to find that the Akron public indecency ordinance violated the First Amendment, this Court is unable to supply a limiting construction for the regulation. It is well recognized that federal 'courts do not rewrite statutes to create constitutionality.' " *Id.* However, a state court handling a state statute challenged as overbroad, should construe the statute to avoid constitutional problems, when the statute is subject to a limiting construction, *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), as was done by the Indiana State Supreme Court in *Barnes*.

In *Barnes*, the United States Supreme Court did not have to address the overbreadth doctrine because the Indiana Supreme Court adequately narrowed the indecency statute to save it from a facial overbreadth attack. The state court held that it is within the state's power to prohibit public nudity, and that the statute was designed to regulate conduct, not speech. The court also recognized that

some public nudity would be tolerated where a communication of ideas is involved. Therefore, the court adequately tailored the statute to apply only to non-expressive activities. We do the same here.

Although it is arguable that the Ordinance could affect protected expression, Paps' claim that the Ordinance is overbroad is neither "substantial" nor "real." [14] The number of artistic performances which involve nudity is slight, and, therefore, the infringement on protected areas of speech is insubstantial. And, if, there is any attempt to enforce the Ordinance against such artistic and theatrical performances, the parties whose rights are infringed upon could bring a First Amendment challenge. Furthermore, it is undisputed that a performance of "Equus" occurred at the Roadhouse Theatre during the months of October and November of 1994, after the City enacted the Ordinance. Thus, the overbreadth is not "real."

Furthermore, the Ordinance is written to limit its enforcement. The Ordinance states in part that:

6. CONSTRUCTION AND SEVERABILITY—It is the intention of the City of Erie that the provisions of this ordinance be construed, enforced and interpreted in such a manner as will cause the least possible infringement of the constitutional rights of free of speech, free expression, due process, equal protection or other fundamental rights....

(City of Erie Ordinance 75–1994.) We interpret and limit the Ordinance to ban the act of being nude in public, not expression. *Barnes* (requiring a dancer to wear "pasties" and a "G-string" does not directly impinge upon First Amendment rights, where a substantial government interest is involved).

Accordingly, applying the overbreadth doctrine, we hold that the Ordinance is not unconstitutional on its face.

---

**14.** *Accord SBC Enterprises, Inc. v. City of South Burlington*, 892 F.Supp. 578, 584 (D.Vt.1995) (ordinance which prohibits public nudity is not overbroad because the sweep is not "substantial." Only a few serious artistic works involve nudity, and the ordinance "does not encompass a

sufficient amount of protected behavior ...."). *But cf. Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (an ordinance which bans all live entertainment—adult or otherwise—is unconstitutionally overbroad).

## PREEMPTION—PENNSYLVANIA'S OBSCENITY STATUTE

■ Paps appears to argue also that the Ordinance is preempted by the state's obscenity statute, Section 5903(a) of the Crimes Code, 18 Pa.C.S. § 5903(a), because the Ordinance criminalizes nude dancing under the guise of protecting the morals of the community, which is inconsistent with the obscenity statute of the Commonwealth which also was enacted to protect the morals of the community. The City counters that the local indecency Ordinance is consistent with the Commonwealth's obscenity statute, and therefore, is not preempted.

The obscenity statute provides in part:

(a) OFFENSES DEFINED.—No person, knowing the obscene character of the materials or performances involved, shall:

. . . .

(5) produce, present or direct any obscene performance or participate in a portion thereof that is obscene or that contributes to its obscenity; or

. . . .

(b) DEFINITIONS. . . .

"OBSCENE." Any material or performance, if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct

. . .

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

. . . .

(k) ORDINANCES OR RESOLUTIONS.—Nothing in this chapter shall be construed to invalidate, supersede, repeal or preempt any ordinance or resolution of any political subdivision insofar as it is consistent with this chapter, and political subdivisions further retain the right to regulate any activities, displays, exhibitions or materials not specifically regulated by this chapter.

Section 5903 of the Crimes Code, 18 Pa.C.S. § 5903.

In *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987), the court stated that merely because a state has legislated in an area of law does not denote that the state law preempts the field. "The General Assembly must clearly show its intent to preempt a field in which it has legislated. The test for preemption. . . . is well established. Either the statute must state on its face that local legislation is forbidden, or 'indicate[ ] an intention on the part of the legislature that it should not be supplemented by municipal bodies.' " *Id.* at 180–81, 523 A.2d at 313 (citations omitted) (alterations in the original).

The obscenity statute at issue does not state that it preempts the field, and in fact, subsection (k) of the statute permits local governments to enact laws in the area of obscenity as long as they are consistent with the statute. The indecency Ordinance and obscenity statute may overlap in some areas, but they regulate different activities. The Ordinance was enacted to prohibit public nudity, not obscene behavior,[15] and was designed to protect the public from the secondary effects associated with nude dancing, not lewd behavior. It was not enacted for the purpose of criminalizing obscene behavior; in fact, the Ordinance does not mention obscenity.[16]

Accordingly, we hold that the Ordinance is not preempted by the Pennsylvania obscenity statute.

---

**15.** Nude dancing alone is not considered an obscene activity. *See Barnes.*

**16.** *Compare 1916 Delaware Tavern v. Zoning Board of Adjustment,* 657 A.2d 63 (Pa.Cmwlth. 1995). In this case, the Court held that a zoning ordinance which restricted the locations of cabarets featuring erotic dancing was not preempted by the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101 to 9–902. The Court found that the Liquor Code and the zoning ordinance were not inconsistent, even though the Liquor Code prohibited nude erotic dancing and the zoning ordinance restricted locations of cabarets that featured exhibitions of specified anatomical areas.

## ATTORNEY FEES AND NAMED PARTY—DEFENDANTS

Since we find that the Ordinance is constitutional and is not preempted by the obscenity statute, we need not address the two remaining issues (1) whether the denial of attorney fees was in error and (2) whether the individually named defendants (the named City Council members) are proper parties to this case.

Accordingly, we reverse the Order of the Court of Common Pleas of Erie County.

### · ORDER

NOW, March 27, 1996, the order of the Court of Common Pleas of Erie County, is hereby reversed.